---



**SO ORDERED,**

*[signature: Edward Ellington]*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: July 10, 2015**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                                          CHAPTER 7
**MICHAEL WILLIAM KIRTLEY**[1]                                  **CASE NO. 1200624EE**
**LEIGH LANEY KIRTLEY**


**A & M INVESTMENTS, LLC, SUREKHA PATEL
AND TRISHAN, LLC**

**VS.**                                                        **ADVERSARY NO. 1200079EE**

**MICHAEL WILLIAM KIRTLEY AND
LEIGH LANEY KIRTLEY**

Hon. R. Michael Bolen                                 Attorney for A & M Investments, LLC,
rmb@hoodbolen.com                                          Surekha Patel, and Trishan, LLC
3770 Highway 80 West
Jackson, MS  39209

Hon. Eileen N. Shaffer                                                  Attorney for Debtors
enslaw@bellsouth.net
P. O. Box 1177
Jackson, MS  39215-1177

Edward Ellington, Judge

---

[1]Subsequent to the time the bankruptcy petition was filed, the Kirtleys divorced.  At trial, Leigh Kirtley stated that she had reverted to her maiden name of Laney.  However, for the purposes of this Opinion, the Court will refer to the parties as Kirtley since that is how the bankruptcy petition was styled.

**MEMORANDUM
OPINION ON THE *COMPLAINT OBJECTING
TO DISCHARGE PURSUANT TO 11 U.S.C. § 727 AND
DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523***

THIS MATTER came before the Court for the trial on the *Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #1) filed by A & M Investments, LLC, Surekha Patel and Trishan, LLC, and the *Response to Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #8) filed by Michael William Kirtley and Leigh Laney Kirtley.  After considering same, the evidence presented at trial and the briefs, the Court finds that the *Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #1) filed by A & M Investments, LLC, Surekha Patel and Trishan, LLC is not well-taken and should be denied with prejudice.

## PROCEDURAL BACKGROUND

Michael William Kirtley and Leigh Laney Kirtley (Debtors) filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on February 23, 2012.  The *Voluntary Petition* (Dkt. #1) states that the nature of the Debtors' debts are primarily business debts.

Also on February 23, 2012, the Debtors filed their *Schedules* (Schedules), *Statement of Financial Affairs* (SOFAs)*,* and *Chapter 7 Statement of Current Monthly Income and Means-Test Calculation* (Dkt. #3).

In their Schedules, the Debtors list the following debts under Schedule F:

See next page.

## SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER | c o d e b t o r | h w j c | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | c o n t i n g e n t | u n l i q u i d a t e d | d i s p u t e d | AMOUNT OF CLAIM[2] |
|---|---|---|---|---|---|---|---|
| A & M Investments c/o Mark D. Ray, Esq. 1000 Lake Village Cir. Brandon, MS  39047 | | J | Business K & K Pet Products Export, LLC | | | | 107,650.00 |
| Surekha Patel c/o Mark D. Ray, Esq. 1000 Lake Village Cir. Brandon, MS  39047 | | J | Business K & K Pet Products Export, Inc. | | | | 68,066.76 |
| Trishan, LLC c/o Mark D. Ray, Esq. 1000 Lake Village Cir. Brandon, MS  39047 | | J | Business | | | | 107,650.00 |

At trial, three *Promissory Notes* (Promissory Notes) were introduced into evidence as Trial Exhibit 10.  The three separate notes were between A & M Investments, LLC, Surekha Patel, and Trishan, LLC (collectively, A&M) and the Debtors individually and their company, K&K Pet Products Export, Inc.   Both Debtors acknowledged that they signed the Promissory Notes (Transcript at 56 and at 64) and that they owed approximately $108,000.00 to A & M Investments, LLC, approximately $108,000.00 to Trishan, LLC, and approximately $65,000.00 to Surekha Patel (for a total of approximately $281,000.00). (Transcript at 62 and at 64-65).

---

[2]*Schedule F – Creditors Holding Unsecured Nonpriority Claims,* Case No. 1200624EE, Docket #3, starting at page 12 of 45, February 23, 2012.

The Promissory Notes were secured by various pieces of real property owned by the Debtors, however, at this point in time, senior lien holders have foreclosed on all of the real property and extinguished the liens of A&M. A&M is now an unsecured creditor of the Debtors. (Transcript at 12 and at 46)

Shortly after the case was filed, A&M filed a flurry of motions on March 7, 2012: a motion for a 2004 examination, an objection to exemptions, a motion to determine whether debts are business debts, and a motion for itemization of assets.[3]

On July 3, 2012, A&M initiated the above-styled adversary proceeding by filing its *Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #1) (Complaint). In its Complaint, A&M alleges the following counts:

Count 1: The Debtors violated 11 U.S.C. § 727(a)(2) by transferring and/or concealing property of the estate;

Count 2: The Debtors violated § 727(a)(4) by knowingly making a false oath;

Count 3: The Debtors violated § 727(a)(5) by failing to explain any loss of assets;

Count 4: The Debtors violated § 727(a)(6) by failing to obey an order of the Court; and

Count 5: The Debtors violated § 523(a)(2) by obtaining credit by false pretenses, actual fraud or false representations.

At trial, A&M withdrew Count 5 of their Complaint, the request to determine the nondischargeability of its particular debt under § 523(a)(2). (Transcript at 4).

The Debtors filed their *Response to Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523* (Adv. Dkt. #8) (Response to Complaint). In their Response to Complaint, the Debtors deny that A&M is entitled to any of the relief requested

---

[3]All of these pleadings were filed in the main bankruptcy case. All have been held in abeyance pending the outcome of the above-styled adversary proceeding. (*See* Dkt. #83).

in their Complaint.

On August 26, 2013, the Debtors filed *Amended Schedule F – Creditors Holding Unsecured Nonpriority Claims* (Dkt. #89) (Amended Schedules).  The Debtors' Amended Schedules added three new creditors to *Schedule F*.  All three are listed as business debts.  The added creditors and the amount alleged to be owed are:

| | |
|---|---|
| Harrell Family Bus | $1,800.00 |
| Highland Medical Art | $25,589.47 |
| Limited Liability Co. | Unknown[4] |

Since the content and/or omissions in the Debtors' Schedules, Amended Schedules and SOFAs are at the center of A&M's objection to the Debtors' discharge, the pertinent facts relating to determining whether § 727 should apply to deny the Debtors' a discharge will be included in the Court's *Conclusions of Law.*

## CONCLUSIONS OF LAW

### I.  Jurisdiction

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to  28  U.S.C. § 1334  and  28 U.S.C. § 157.  This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(J).

---

[4]*Amended Schedule F – Creditors Holding Unsecured Nonpriority Claims,* Case No. 1200624EE, Docket #89, August 26, 2013.

## II. Procedural Matter

In its *Plaintiffs' Post-Trial Brief in Support of Complaint to Deny Discharge,*[5] A&M correctly states that at the beginning of the trial, the Court took judicial notice of the court file. (Transcript at 4). However, A&M then states: "The Court files include a motion (Dkt. #17) for summary judgment that has attached to it as Exhibits "A" and "B" selected pages from the depositions of Defendants that were referred to in the trial and may be referred to herein."[6]

A&M misunderstands the purpose and scope of judicial notice. The Court of Appeals for the Fifth Circuit found that

> Rule 201 of the Federal Rules of Evidence provides that a court *may* take judicial notice of an "adjudicative fact" if the fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."

*Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998); *see also Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H 11 CV 1846, 2012 WL 2886720, at *1 (S.D. Tex. July 12, 2012). "Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." *United States v. Ritchie,* 342 F.3d 903, 908-09 (9th Cir.2003)(citing Fed. R. Evid. 201(b)). Facts that are subject to judicial notice are indisputable facts that are "either 'generally known'. . . or capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned[.]" *Id.* at 909.

In the case at bar, the Court took judicial notice of the facts contained in the Court file that are not subject to reasonable dispute such as the date the petition was filed; the Schedules and

---

[5]*Plaintiffs' Post-Trial Brief in Support of Complaint to Deny Discharge*, Adv. Pro. No. 1200079EE, Adv. Dkt. #58, p. 8-9, March 16, 2015.

[6]*Id.* at 9.

SOFAs; the date pleadings were filed; the date orders were entered; and the content of the pleadings which are currently before the Court, etc. The Court did not take judicial notice of the court file as a substitute for the admission of proof by a party, namely, pages from depositions which are attached to a motion for summary judgment.

In addition, at trial, A&M's attorney specifically stated that he had decided not to submit into evidence pages from depositions. When introducing exhibits the parties had stipulated could be admitted into evidence, Mr. Bolen stated: "Number 11, I thought when I prepared the list I was going to use some of the pages from the depositions, but after looking at it I decided not to and I forgot to delete Number 11." (Transcript at 4)

Because A&M declined to introduce at trial the transcript of depositions (the Court presumes of the Debtors), the fact that the Court took judicial notice of the court file does not bring into evidence the exhibits attached to a motion for summary judgment not pending before the Court.[7] *See Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring, Inc.),* 480 F. App'x. 327, 329 (5th Cir. 2012)("We see no reason to require a court to take judicial notice of the contents of evidence not properly introduced in the bankruptcy proceeding.")

### III. § 727(a) Generally

Under 11 U.S.C. § 727(a),[8] a court must grant a debtor a discharge unless one of the enumerated exceptions for denying a debtor a discharge under § 727(a) are proven. "The exceptions are construed strictly against the creditor and liberally in favor of the debtor." *The Cadle Co. v.*

---

[7]On November 8, 2013, the Court entered its *Memorandum Opinion on Motion of Plaintiffs for Summary Judgment* (Dkt. #25) denying A&M's motion.

[8]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

*Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009) (citation omitted). The burden of proof is on the creditor and "must be proven by a preponderance of the evidence. *See Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 660, 112 L.Ed. 2d 755 (1991)." *Beaufouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992).

As noted, A&M objects to the discharge of the Debtors under numerous subsections of Section 727(a). Section 727(a) provides in pertinent part:

§ 727.   Discharge.

(a) The court shall grant the debtor a discharge, unless–

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account;

(B) presented or used a false claim;

. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;
(6) the debtor has refused, in the case--

     (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

     (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

     (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

11 U.S.C. § 727(a)(2), (4), (5) and (6).

In *Hughes v. Wells (In re Wells),* 426 B.R. 579, 588-89 (Bankr. N.D. Tex. 2006), the Honorable Barbara J. Houser, a bankruptcy judge for the Northern District of Texas, provides a clear and thoughtful discussion of the same four subsections of § 727(a) under which A&M seeks to have the Debtors' discharge denied. Instead of reinventing the wheel, the Court will quote extensively from Judge Houser's well-reasoned opinion in addressing each of the subsections separately below:

### A. § 727(a)(2) Transfer of Assets

In its Complaint, A&M alleges that:

Plaintiffs will show that the above specified acts of defendants violate 11 U. S. C. § 727(a)(2) in that defendants with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.[9]

In addressing § 727(a)(2), Judge Houser found:

In order to prevail on their § 727(a)(2)(A) claim, the [creditors] must prove, by a

---

[9]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 14, July 3, 2012.

preponderance of the evidence, that (1) a transfer or concealment of property (2) belonging to [the debtor] (3) was made within one year of the Petition Date (4) with the intent to hinder, delay, or defraud a creditor of [the debtor]. *Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561, 565 (5th Cir. 2005); *Guenther,* 333 B.R. at 764. Likewise, in order to prevail on their § 727(a)(2)(B) claim, the [creditors] must prove, by a preponderance of the evidence, that there was (1) a transfer, removal, or concealment of property (2) belonging to the estate (3) post-petition (4) that was made with the intent to hinder, delay, or defraud a creditor of [the debtor]. *See Cadle Co. v. Pratt,* 2004 WL 718977, at *2 n. 2 (N.D. Tex. Mar. 31, 2004) (Lindsay, J.) *aff'd sub nom. Cadle Co. v. Pratt (In re Pratt),* 411 F.3d 561 (5th Cir. 2005); *see also Oldendorf v. Buckman,* 173 B.R. 99, 106 (E.D. La. 1994).

Evidence of a debtor's actual intent to defraud creditors is required to deny a debtor his discharge; constructive intent is not enough.  *Pavy v. Chastant (In re Chastant),* 873 F.2d 89, 91 (5th Cir. 1989). However, the intent to hinder, delay, or defraud may be inferred by a debtor's actions and proven by circumstantial evidence. *Id.; Guenther,* 333 B.R. at 764. Circumstantial factors that tend to prove an intent to hinder, delay, or defraud include:

> "(1) the lack or inadequacy of consideration;
>
> (2) the family, friendship, or close associate relationship between the parties;
>
> (3) the retention of possession, benefit, or use of the property in question;
>
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>
> (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
> (6) the general chronology of the events and transactions under inquiry."

*Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 702 (5th Cir. 2003) (quoting *Chastant,* 873 F.2d at 91). Any of these factors alone may be sufficient to find an intent to hinder, delay, or defraud creditors; "the accumulation of several factors indicates strongly that the debtor possessed the requisite intent." *FDIC v. Sullivan (In re Sullivan),* 204 B.R. 919, 941 (Bankr. N.D. Tex.1997) (Abramson, J.); *see also U.S. Trustee v. Baum (In re Baum),* 2005 Bankr. LEXIS 514, at *18 (Bankr. N.D. Tex. Mar. 30, 2005) (Jones, J.).

*In re Wells,* 426 B.R. at 588-89.

In *Wells*, the debtor transferred $25,000 from his law practice to his minor son pre-petition. Post-petition, the debtor transferred to a contractor building a pool at his house over $58,000 in cashier's checks he held on the date he filed his bankruptcy petition. Judge Houser found that the debtor made these transactions in order to keep his creditors from reaching these funds. For those reasons, Judge Houser found the debtor's discharge should be denied under § 727(a)(2)(A) and (B).

In the case at bar, A&M has not produced any evidence to show that the Debtors made a transfer or concealed property within one year of filing bankruptcy or transferred or concealed property post-petition. Consequently, A&M has not met its burden of proving by a preponderance of the evidence that the Debtors' discharge should be denied pursuant to § 727(a)(2)(A) or (B).

### B.  § 727(a)(4) False Oath

A&M next alleges that the Debtors' discharge should be denied pursuant to § 727(a)(4)(A) and (B) for making a false oath in their Schedules and SOFAs. In addressing § 727(a)(4), Judge Houser found:

> In order to prevail on their § 727(a)(4)(A) claim, the [creditors] must show that " '(1) [debtor] made a statement under oath; (2) the statement was false; (3) [debtor] knew the statement was false; (4) [debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.' " *Pratt,* 411 F.3d at 566 (quoting *Beaubouef,* 966 F.2d at 179); *Guenther,* 333 B.R. at 766.

> Moreover, a debtor who files Chapter 7 has a continuing, affirmative duty to disclose the following information completely and accurately: "'(a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs.'" *Guenther*, 333 B.R. at 766 (quoting *Gebhardt v. Gartner (In re Gartner),* 326 B.R. 357, 367 (Bankr. S.D. Tex. 2005) (citing *Browning Mfg. v. Mims (In re Coastal Plains, Inc.),* 179 F.3d 197, 208 (5th Cir.1999))). Full disclosure of a debtor's assets and liabilities is required because the purpose of the schedules is to insure that adequate information is available for the debtor's creditors without the need for investigation to determine whether all the information provided in the schedules and SOFAs is true. *Pratt,* 411 F.3d at 566; *Guenther,* 333 B.R. at 766. "A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects." *Morton v. Dreyer (In re Dreyer),* 127 B.R.

587, 593–94 (Bankr. N.D. Tex. 1991) (Akard, J.).

False oaths can be in the form of false statements or omissions on the schedules and statements of financial affairs or false statements made by the debtor during the course of the bankruptcy proceedings. *Guenther,* 333 B.R. at 766; *see also Pratt,* 411 F.3d at 566. While a debtor's schedules and statement of financial affairs need not be perfect, they are documents of substance and importance and are required to be signed under oath; debtors who display "reckless indifference" in filling out their schedules and statement of financial affairs are not entitled to a Chapter 7 discharge. *Guenther,* 333 B.R. at 767 (citing *Sholdra v. Chilmark Fin. LLP (In re Sholdra),* 249 F.3d 380, 382 (5th Cir.2001) and *Beaubouef,* 966 F.2d at 178). "Debtors who make more than one false statement under oath with an opportunity to clear up the inconsistencies have demonstrated recklessness, which is sufficient for the bankruptcy court to infer the requisite intent." *Guenther,* 333 B.R. at 767 (citing *Beaubouef,* 966 F.2d at 178).

In *Guenther,* the court denied the debtors a discharge under § 727(a)(4)(A) based on the debtors' pattern of fraudulent behavior—namely, the debtors' "inability to be truthful or complete in their disclosures prior to and during the bankruptcy process." *Id.* at 768. The *Guenther* court noted that, when viewed in isolation, the incidents of and intent behind certain omissions from the debtors' schedules and statement of financial affairs may have been innocuous, but when looked at as an aggregate, a pattern of disregard for the truth began to appear. *Id.* at 767. The court was unimpressed with the debtors' obvious gamesmanship and hide-the-ball approach to completion of their schedules and statement of financial affairs:

> [T]he Debtors have thwarted the discovery and disclosure process in every encounter with [the creditor]. The obvious game playing strikes at the purpose of why a false oath can cause a discharge to be denied. On every occasion, whether it was pre-petition discovery, the SOFA or the original Schedules, the Debtors withheld some information.

*Id.* at 767. The court went on to note that, where confronted with mistaken information in the schedules, "the appropriate response [of the debtors] is to offer amended information in a prompt fashion, and not to wait to amend the errors only after the insistence of one of [the debtors'] creditors." *Id.* at 767–68. Ultimately, the court determined that the debtors' pattern of non-responsiveness, coupled with an extended delay in amending the schedules to include the missing information, was sufficient, under the totality of the circumstances, to find the debtors had acted with fraudulent intent and/or reckless indifference to the truth and, accordingly, possessed the requisite fraudulent intent to deny a discharge under § 727(a)(4)(A). *Id.* at 768.

Notwithstanding a finding of fraudulent intent, it is also necessary that the omissions or statements be materially related to the debtor's bankruptcy case. *Id.* The *Guenther* court noted that " '[a] false oath is "material" and thus sufficient to bar discharge, if

it bears a relationship to the bankrupt's business transactions or estate, or the existence and disposition of his property.' " *Id.* (quoting *Pratt,* 411 F.3d at 566). "'A debtor's claim that he omitted an asset because the asset has no value or would not be detrimental to creditors is irrelevant and without merit. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.' " *Id.* (quoting *Gartner,* 326 B.R. at 372).

*In re Wells*, 426 B.R. at 599-600.

In its Complaint, A&M makes many allegations regarding misrepresentations, omissions, and/or false statements the Debtors allegedly made in their Schedules and/or SOFAs:

–misrepresented that their debts were primarily business debts;

–failed to include rental income;

–misrepresented their expenses on *Schedule J – Current Expenditures of Individual Debtor(s)* (Schedule J);

–misrepresented that they intended to enter into reaffirmation agreements on their house, Dauphin Island property and vehicles in their *Chapter 7 Individual Debtor's Statement of Intention* (Statement of Intention);

–undervalued their household goods by failing to disclose antiques and paintings;

–failed to disclose jewelry; and

–undervalued their businesses.[10]

However, with regard to *Count 2* of its Complaint, A&M does not specify which misrepresentations, omissions, and/or false statements it alleges qualifies under § 727(a)(4).  Instead, A&M simply states:  "Plaintiffs will show that the above specified acts of defendants violate 11 U.S.C. § 727(a)(4) in that defendants knowingly and fraudulently, in or in connection with the case made a false oath or account."[11]

_____

[10]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered pages 4-14, July 3, 2012.

[11]*Id.* at unnumbered page 14.

Since the Court will address the rental income and the undervaluation of their businesses in other sections of this Opinion, the Court will not address these allegation in relation to § 727(4)(A).

In order to determine what exactly A&M claims were false oaths under § 727(a)(4), the Court can only look to the questioning of the Debtors by A&M at the trial. At the trial, A&M concentrated its questioning on its allegations that the Debtors failed to disclose jewelry, artwork and antiques; misrepresented their expenses and their intentions to reaffirm debts with their creditors.

### 1. Misrepresented expenses on Schedule J/Statement of Intention.

A&M alleges that the Debtors misrepresented their expenses on Schedule J because they were not routinely making some of the payments listed on Schedule J and because they did not intend to enter into reaffirmation agreements[12] on their secured debt.

The instructions for Schedule J state:

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.[13]

At trial, the Debtors were questioned about the expenses they listed on Schedule J. They were asked about their mortgage payments, clothing expenses, college tuition payments, gym expenses and vehicle expenses. The Debtors testified that they believed Schedule J was asking for

---

[12]Under § 524(c), a debtor and a creditor may enter into an agreement for the debtor to *reaffirm* a debt that otherwise would be dischargeable. This is referred to as a Reaffirmation Agreement. Very simply, if the creditor agrees to enter into a reaffirmation agreement with a debtor, the debtor and the creditor enter into a new obligation, and the debtor's personal liability on the debt is not discharged.

[13]*Schedule J – Current Expenditures of Individual Debtor(s),* Case No. 1200624EE, Dkt. #3, page 19 of 45, February 23, 2012.

them to estimate their average or projected monthly expenses and that is how they filled out Schedule J. (Transcript at 54 and at 74). In addition, A&M questioned the Debtors about why they did not enter into reaffirmation agreements with any of their secured creditors.

In its brief, A&M cites *In re White,* 512 B.R. 822 (Bankr. N.D. Miss. 2014), in support of its position that the Debtors made a false oath: (1) by failing to "complete Schedule J as actual expenses going forward"[14] and (2) for claiming on their Statement of Intention that they were going to reaffirm their secured debts when they knew they were not going to do so. A&M's reliance on *White* is totally misplaced.

*White* involved the *Means Test* and a motion to dismiss a Chapter 7 bankruptcy case for substantial abuse under § 707(b)–*White* was not about the expenses listed by a debtor on Schedule J. Following Fifth Circuit precedent, the bankruptcy court in *White* held that under § 707(b), "[i]n order to deduct payments on secured debt 'scheduled as contractually due,' a debtor must intend to actually make the payments going forward."[15] Contrary to A&M's assertions, neither *White* nor the Fifth Circuit have held that a debtor must complete Schedule J "looking forward" in the context of § 727.

The Debtors testified that they believed Schedule J to be a projected monthly budget. While some of the figures on Schedule J may be considered to be on the high side, the Court does not find that inflated numbers on Schedule J meet the standards for a false oath under § 727(a)(4). A&M has not shown that the Debtors filled out Schedule J with a fraudulent intent or with a reckless indifference.

---

[14]*Plaintiffs' Post-Trial Brief in Support of Complaint to Deny Discharge*, Adv. Pro. No. 1200079EE, Adv. Dkt. #58, p. 15, March 16, 2015.

[15]*In re White*, 512 B.R. at 829.

As for their Statement of Intention,[16] both Debtors testified that at the time they filled out their Statement of Intention, they intended to keep their secured property and enter into reaffirmation agreements with their creditors. (Transcript at 61 and at 76). However, both Debtors also testified that their creditors would not agree to allow them to "restructure" their secured debts. (Transcript at 53, 61-62 and at 76).

A&M has cited no authority that holds if debtors state on their statement of intention that they intend to keep their secured collateral but thereafter fail to enter into reaffirmation agreements on the secured collateral, that statement constitutes a false oath and/or misrepresentation. Nor has A&M cited any authority that holds that a debtor can force a secured creditor to enter into a reaffirmation agreement.

Consequently, the Court finds that A&M has not met its burden of proving by a preponderance of the evidence that the Debtors' Schedule J and Statement of Intent constitute a false oath under § 727(a)(4).

### 2. Misrepresented their debts as primarily business debts.

Without explaining how it arrived at the calculation, A&M alleges in its brief that "[o]n the date of bankruptcy, the difference in this being a consumer case or a business case is less than $50,000.00."[17] While it is not totally clear to the Court, it appears that A&M alleges that the Debtors are being untruthful on *Schedule D – Creditors Holding Secured Claims* (Schedule D) when they listed $100,000.00 of the $360,000.00 the Debtors obtained from Trustmark National Bank

---

[16]*Chapter 7 Individual Debtor's Statement of Intention*, Case No. 1200624EE, Dkt. #3, starting at page 31 of 45, February 23, 2012.

[17]*Plaintiffs' Post-Trial Brief in Support of Complaint to Deny Discharge*, Adv. Pro. No. 1200079EE, Adv. Dkt. #58, p. 15, March 16, 2015.

(Trustmark) as a business debt.

Ms. Kirtley testified that while they were adding an addition to their house, there was a fire. She testified that of the $360,000.00 they received from Trustmark, she believed approximately $100,000.00 was put into her businesses. (Transcript at 72-73). Mr. Kirtley testified that going back and looking at invoices for the repairs to the house, he believed that only $134,000.00 of the $360,000.00 went into their home for improvements. (Transcript at 48-49).

Assuming that the $50,000.00[18] difference in the Debtors' consumer debts and their business debts is factually correct, A&M has offered no authority[19] to support its position that $50,000.00 is a significant number in determining whether a debtor's case should be classified as either consumer or business.

The Court finds it compelling that neither the Chapter 7 Trustee, Derek A. Henderson, nor the United States Trustee has challenged the Debtors' classification of their bankruptcy case as a business case. A&M has not shown that the Debtors' classification of their bankruptcy petition as being a business case to be false and made with fraudulent intent. Consequently, the Court finds that A&M has not met its burden of proving that the Debtors' assertion that their case is a business case constitutes a false oath under § 727(a)(4).

---

[18] The Court notes that if the additional $27,000.00 business debt from Amended Schedule F is added to A&M's figure, the difference is more than $75,000.00.

[19] The Court notes that Miss. Bankr. L. R. 9013-1(a) requires a party to cite a rule, code section, case law or other authority to support allegations. Under Fifth Circuit precedent, an unsupported allegation is waived. *Hughes v. Dretke,* 412 F.3d 582, 597 (5th Cir. 2005), *cert. denied,* 546 U.S. 1177 (2006); *Turner v. Quarterman,* 481 F.3d 292, 295 n. 1 (5th Cir. 2007), *cert. denied,* 551 U.S. 1193 (2007).

### 3. Failure to disclose jewelry, antiques and paintings.

On *Schedule B – Personal Property* (Schedule B), in response to *"4. Household goods and furnishings, including audio, video, and computer equipment,"* the Debtors list: *"Household goods and furnishings,"* with a value of $10,000.00.[20]  In response to *"5.  Books, pictures and other art objects, antiques, stamp, coin, record, tap, compact disc, and other collections or collectibles,"* the Debtors checked "none."[21]  In response to *"7. Furs and jewelry,"* the Debtors list:  *"Jewelry"* with a value of $2,000.00.[22]

A&M alleges that the Debtors' responses to the above questions on Schedule B constitute a false oath.  A&M alleges that the Debtors undervalued the jewelry and household goods they owned and failed to disclose art work and antiques.

### a. Artwork/Paintings

Jitendra Patel, the owner of A & M Investments, LLC, testified that he had been in the Debtors' home and that they some "paintings" (Transcript at 23) in a hallway and the kitchen. (Transcript at 27)  However, on cross-examination, Mr. Patel testified that he did not know if the paintings he had seen were originals or the names of artists. (Transcript at 29).

Mr. Kirtley testified that they owned "a variety of pictures and paintings that none of which are original.  Some of them are family photos that were painted, or paintings of family members. Reproductions. . . . But there was no original artwork that I'm aware of in our house."[23]  When

---

[20]*Schedule B – Personal Property*, Case No. 1200624EE, Dkt. #3, p. 4 of 45, February  23, 2012.

[21]*Id.*

[22]*Id.*

[23]Transcript at 37.

questioned further, Mr. Kirtley testified that "there may have been an oil painting of our family, but I don't know – I don't know what the paintings – what medium was used to get that image that we have."[24]

Ms. Kirtley was also questioned about the any artwork/paintings that they owed.  She testified:

> Q.  And would you describe those paintings to the Court?
>
> A.  Three landscape pieces, maybe two that were from Merchandise Warehouse before they went out of business.  I paid like 400 to $500 a piece for them.
>
> Q.  Okay.  Were these paintings that were done by a local artist, or are these just something that you –
>
> A.  I have no idea.  I just bought them at Merchandise Warehouse because they had pretty colors.  I'm not an art person.  I don't know artists and stuff like that.

Transcript at 66-67.

### b.  Jewelry

Mr. Patel testified that he had seen a diamond ring belonging to Ms. Kirtley.  Mr. Patel testified that Ms. Kirtley told him that the ring was valued between $50,000.00 and $60,000.00.  (Transcript at 24).

Mr. Kirtley testified that to his knowledge the majority of  Ms. Kirtley's jewelry was costume jewelry.  (Transcript at 45).  Ms. Kirtley testified that she had a diamond ring, a bracelet and a necklace that had belonged to her mother.  (Transcript at 68).

With regard to the diamond ring, both Debtors testified that they had the ring appraised after they had filed bankruptcy and that it was valued at $5,000.00.   (Transcript at 45 and at 68).  However, the appraisal of the ring was not introduced into evidence.

---

[24]Transcript at 38.

Ms. Kirtley was questioned further about the diamond ring and testified:

Q. Okay. And that you have previously told Jitu Patel that the ring had a value of up to 60,000?

A. Yes. I'm not used to someone asking me the cost of what I wear.

Q. But you did tell him that the ring was worth 60,000 and that you purchased it in Paris?

A. I didn't buy it in Paris. And I was lying, it's not worth 60,000. I was mad because someone asked me the cost of it.

(Transcript at 68).

On cross-examination, Mr. Kirtley testified that on *Schedule C – Property Claimed as Exempt*,[25] (Exemptions) they claimed $2,000.00 worth of jewelry as exempt. When the items claimed as exempt are totaled, Mr. Kirtley agreed with his attorney that the additional value of $3,000.00 for the diamond ring could be added to their exemptions and still be under the $20,000.00 exemption limit. (Transcript at 59-60). However, the Court notes that the Debtors have not amended their exemptions.

### c. Antique Furniture

As to antique furniture, Mr. Patel testified that Ms. Kirtley had "made some references that she had some antique *(sic)* but I never seen them *(sic)*." (Transcript at 24). Mr. Patel further testified that he had not seen any antique furniture in the Debtors' home and that he did not know what the antique furniture was worth. (Transcript at 24).

Mr. Kirtley testified that they did own furniture "that could be qualified as an antique because it was more than a 100 years old, but I didn't consider that to be a collection or a collectible.

---

[25]*Schedule C – Property Claimed as Exempt*, Case No. 1200624EE, Dkt. #3, p. 4 of 45, February 23, 2012.

It was actually the bedroom furniture that we used in our house. And we listed it in our furnishings. It's included in the $10,000.00." (Transcript at 35).

Mr. Kirtley was questioned about a 2007 *Credit Loan Application* (Trustmark Application) he completed for a home equity loan with Trustmark (Trial Exhibit 7) and a 2008 *Uniform Residential Loan Application*[26] (Regions Loan Application) in which the Debtors refinanced the mortgage on their home (Trial Exhibit 6). Under *Assets*, both loan applications list $25,000.00 for *Household Furnishings* and $70,000.00 for *Antiques*. With regard to these applications, Mr. Kirtley testified:

> Q. The furniture that you owned as of the date that you did those applications for the
>
> bank loans, that's the same furniture you owned when you filed for bankruptcy, is
>
> that correct?
>
> A. Yes, sir.[27]

On cross-examination, Mr. Kirtley again stated that the antiques were included in the $10,000.00 value and that "we tried to sell some of our stuff after we moved out and we found out that what we had was pretty much worthless, even the antiques. I went to a resale store on I-55 North and they said our antiques were worth about $1,500."[28] Mr. Kirtley further stated that

---

[26]The loan application was between the Debtors and Madison County Mortgage, LLC. According to the *Corporate Assignment of Deed of Trust* attached as an exhibit to the *Motion for Relief from Automatic Stay and for Other Relief* filed by Regions Bank d/b/a Regions Mortgage (Trial Exhibit 3), Regions Mortgage was assigned the deed of trust on January 6, 2012. At the trial, Exhibit 6 was referred to as the Regions Loan Application. For purposes of this Opinion, the Court will also refer to Exhibit 6 as the Regions Loan Application.

[27]Transcript at 37.

[28]Transcript at 57.

Trustmark "came into the house and took pictures of everything that we had in there,"[29] but that Trustmark did not object to their discharge.

When Ms. Kirtley was questioned about the values placed on the two loan applications, she acknowledged that Mr. Kirtley had listed the values of $25,000.00 for household goods and $70,000.00 for antiques, but she stated those values "[are] way high." (Transcript at 66). Ms. Kirtley stated that the antiques they owned were a bedroom suite and a couch. (*Id.*)

### d. Summary

As stated previously, in order for A&M to prevail on their § 727(a)(4) claim, it must prove that "'(1) [[the Debtors]] made a statement under oath; (2) the statement was false; (3) [[the Debtors]] knew the statement was false; (4) [[the Debtors]] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'" *In re Wells,* 426 B.R. at 599 (citations omitted). While there is no dispute that the Debtors filed their Schedules and SOFAs under oath, the Court finds that unlike the creditors in *Wells*, A&M has not submitted sufficient proof of the remaining elements for the Debtors to be denied a discharge under § 727(a)(4).

In *Wells*, the debtor amended his schedules three times. However, Judge Houser found that despite the amendments, the creditors had proven that the debtor failed to disclose: a $39,000.00 commission he earned; the executory contract for the construction of a pool; the $600,000.00 refinance of property he owned; and the $25,000.00 transfer to his minor son. The court was also troubled by the initial omissions by the debtor of a mineral interest, a country club membership and his monthly contributions to accounts owned by his children. The court found that the debtor did not sufficiently explain the omissions or errors in his schedules in order to show that they were made

---

[29]*Id.* at 57-58.

without fraudulent intent.  The court held that the debtor should be denied a discharge under § 727(a)(4) because "[a]ll of these omissions are material because they bear a relationship to [the debtor's] business transactions or estate.  Moreover, they evidence the existence and disposition of [the debtor's] property."[30]

In the case at bar, Mr. Patel testified that he saw some artwork on the walls of the Debtors' home and that he was told about antiques.  However, he did not know if any of the artwork was original artwork, and he never saw any antiques in the home.  The Debtors testified that they owned a few pieces of furniture that would be considered antiques, but that they included the value of this furniture in the $10,000.00 claimed as household goods and furnishings on Schedule B.  However, A&M failed to submit proof that the Debtors fraudulently failed to separately list the antiques on their Schedules and that the value of the antiques would bear on the Debtors' estate.  Mr. Kirtley testified that when he took the antiques to a resale shop, he was told that the antiques were worth about $1,500.00.  (Transcript at 57).  A&M offered no proof to contradict this testimony, and Mr. Patel acknowledged that A&M did not hire an appraiser to go to the Debtors' home and appraise the Debtors' personal property.  (Transcript at 30).  In addition, other than Ms. Kirtley's testimony that she had paid between $400 and $500 for the three paintings, there was no other testimony regarding the value of the Debtors' artwork/paintings.   Again, A&M has not show that the Debtors fraudulently failed to disclose artwork/paintings on their Schedules.

As for the diamond ring, A&M's only evidence of the value of the diamond ring was Mr. Patel's testimony that he was told by Ms. Kirtley that the ring was worth $60,000.00.  The Court finds credible Ms. Kirtley's explanation as to why she told Mr. Patel that her ring was worth

---

[30]*In re Wells,* 426 B.R. at 604.

$60,0000.00.

Both Debtors testified that the diamond ring was appraised post-petition and valued at $5,000.00. The Court finds that once the Debtors had the diamond ring appraised, in order to provide their creditors with a "full disclosure of [their] assets and liabilities,"[31] they had a duty to file an amended Schedule B to show the value of the ring and to file amended Exemptions to claim the ring as exempt.

Notwithstanding, the Court is not willing to deny the Debtors their discharge for failure of their attorney to file amended Schedules to reflect the value of the diamond ring. In addition, the Court finds that A&M was informed about the value of the ring in April of 2012,[32] when Ms. Kirtley testified at her deposition[33] that the appraisal on the diamond ring was for around $5,000.00.

While A&M has proven that the Debtors made a statement under oath when they filed their Schedules and SOFAs, A&M has failed to prove that the Debtors made a statement they knew was false; that a statement was made with fraudulent intent; and that the false statement was material to the bankruptcy case.[34] Nor has A&M shown that the Debtors filled out their Schedules with a reckless indifference.[35] Consequently, A&M has not met its burden of proving by a preponderance of the evidence that the Debtors' discharge should be denied pursuant to § 727(a)(4).

---

[31]*In re Wells,* 426 B.R. at 599.

[32]*Agreed Order Scheduling Examination Pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure*, Case No. 1200624EE, Dkt. #33, April 3, 2012.

[33]At trial, A&M's attorney asked Ms. Kirtley: "Q. Okay. Now, in your deposition you said that the ring was worth about 5,000? A. Correct." (Transcript at 68).

[34]*In re Wells,* 426 B.R. at 599. (citations omitted).

[35]*Id.*

## C.  § 727(a)(5) Loss of Assets

A&M also alleges that the Debtors should be denied a discharge because they have failed to explain "any loss of assets or deficiency of assets to meet the defendants' liabilities."[36]  Judge Houser addressed § 727(a)(5) and stated:

> The [creditors] next object to [the debtor] receiving a discharge on the grounds that [the debtor] failed to explain satisfactorily the loss of assets of the estate or why there is a deficiency of assets to meet his liabilities. Under § 727(a)(5), a debtor may be denied a discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge . . . , any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).  A creditor has the initial burden of making known by proper allegation in its complaint the assets the debtor once had but which are no longer available for creditors. *Mozeika v. Townsley (In re Townsley)*, 195 B.R. 54, 64 (Bankr. E.D. Tex. 1996); *see also First Tex. Savings Ass'n, Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992 (5th Cir. 1983); *First Nat'l Bank of Amarillo v. Holmes (In re Holmes)*, 121 B.R. 505, 508 (Bankr. N.D. Tex.1990) (Akard, J.). Upon the creditor's introduction of evidence substantiating the disappearance of substantial assets of the debtor, "the burden shifts to the [d]ebtor to explain satisfactorily the losses or deficiencies." *Townsley,* 195 B.R. at 64; *see also Reed,* 700 F.2d at 992–93. The explanation offered by the debtor of the disposition of assets need not be meritorious; rather, the explanation need only satisfactorily account for the disposition. *Holmes,* 121 B.R. at 508. Whether a debtor has satisfactorily explained a loss of assets is a factual finding to be made by the bankruptcy court. *Cadle Co. v. Andrews (In re Andrews),* 98 Fed.Appx. 290, 295 (5th Cir. 2004).

*In re Wells*, 426 B.R. at 606-07.

Looking to the Complaint, the Court finds that A&M has failed to allege any specific loss or deficiency of assets.  Paragraph X of the Complaint briefly mentions that the Debtors had rental income for 2011.  However, there is no further mention in the Complaint of any rental income. Further, A&M did not produce any evidence at trial to show that the Debtors received rental income, but failed to disclose it.

---

[36]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 15, July 3, 2012.

The Complaint also makes general allegations about the valuation of the Debtors' businesses. In the Complaint, A&M alleges that Mr. Kritley's business, Jackson Rehab and Wellness Center, had accounts receivable and owned real property. Other than the statement in the Complaint that the Debtors "apparently collected such accounts receivable,"[37] A&M does not offer proof as to what the accounts receivable consisted of; whether the accounts receivable were actually collected by the Debtors; or whether the accounts receivable disappeared.

At trial, Mr. Kirtley was questioned about the value he placed on Jackson Rehab. Mr. Kirtley was asked about the equipment, real property and accounts receivables Jackson Rehab owned. (Transcript at 41-44). A&M did not offer any evidence to prove the value of these assets or any evidence to prove the loss of any of these assets.

Mr. Kirtley testified that while Jackson Rehab's 2011 federal tax return[38] showed a gross income of $313,241.00 for 2011, the company also had long-term loans of $80,000.00, equipment loans of approximately $10,000.00, plus payroll and rent expenses. (Transcript at 42-43). He further testified that even though Jackson Rehab had some accounts receivable at the time of the filing of their individual bankruptcy petition, Jackson Rehab had a negative value. (Transcript at 43). A&M offered no evidence to contradict Mr. Kirtley's testimony.

In its Complaint, A&M makes nearly the identical allegations with regard to Ms. Kirtley's business, "K & K Exports, LLC"[39] (K & K). A&M states in its Complaint that Ms. Kirtley operated

---

[37]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 12, July 3, 2012.

[38]Trial Exhibit 8.

[39]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 12, July 3, 2012.

K & K post-petition and had accounts receivables.  A&M then states that Ms. Kirtley "apparently collected these accounts receivable."[40]

At trial, Ms. Kirtley was questioned about K & K and another business which is not mentioned in the Complaint, OmniPro.  Ms. Kirtley testified that OmniPro was not operating in the United States and that she was totally out of the business and that OmniPro had a zero value. (Transcript at 70, 71).  A&M offered no proof to contradict this testimony.

As for K & K, Ms. Kirtley testified that she exports for two vitamin manufacturers.  The only other testimony regarding K & K, was this exchange:

Q.  K&K, you never shut down the K&K business, did you?

A.  I closed one and opened up another with an LLC.  Got rid of the Inc.[41]

The Court notes that Trial Exhibit 10 shows that the Promissory Notes between A&M and the Debtors were signed by the Debtors individually and by the Debtors for "K&K Pet Products Export, **Inc.**"  Consequently, the allegations in the Complaint pertaining to accounts receivables owned by K & K Exports, LLC. are irrelevant since no proof was offered to show that K & K Exports, LLC is indebted to A&M.

The Court finds that other than general allegations, A&M failed to state in its Complaint the assets it claims the Debtors once had but which are now unavailable to their creditors.  Further, the Court finds that A&M failed at trial to "[introduce] evidence substantiating the disappearance of substantial assets of the debtor, [therefore] 'the burden [did not shift] to the [d]ebtor to explain satisfactorily the losses or deficiencies'" *In re Wells*, 426 B.R. at 606. (citation omitted).  A&M did

---

[40]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 12, July 3, 2012.

[41]Transcript at 70-71.

not offer any proof that Jackson Rehab or K&K Pet Products Export, Inc. collected accounts receivables or that the Debtors sold the Jackson Rehab equipment and real property and kept the money hidden from its creditors.[42]   Nor did A&M offer any proof to contradict the Debtors' testimony that their businesses were valued at zero.  Consequently, the Court finds that A&M has failed to meet its burden of denying the Debtors a discharge under § 727(a)(5).

### D.  § 727(a)(6) Refusal to Obey a Lawful Order of the Court

The Court notes that there are three subsections under section § 727(a)(6).  However, the Complaint only has broad sweeping language and fails to specify which subsection(s) of § 727(a)(6) A&M alleges the Debtors have violated.[43]   The Court will presume A&M is proceeding under subsection (A) of § 727(a)(6).

A&M alleges that the Debtors "were directed by an order of the Court entered on April 3, 2012 to produce all jewelry they owned for appraisal and receipts for purchases of such jewelry. . . .[The Debtors] intentionally refused without justification or excuse to produce their jewelry or the receipts for purchases of any jewelry."[44]

In *Wells,* Judge Houser discussed § 727(a)(6)(A) and found:

> Finally, the [creditors] object to [the debtor] being granted a discharge on the grounds that [the debtor] failed to comply with either (i) this Court's Order Granting Motion for 2004 Examination of the Debtor (the "2004 Order") and ordering [the debtor] to produce documents responsive to the [creditors'] request or (ii) the obligation of [the debtor] to disclose his fee arrangement with his attorneys.  Under § 727(a)(6)(A), a debtor may be denied a discharge where the debtor "has refused ...

---

[42]At trial, Mr. Kirtley was asked if he still owned the equipment.  Mr. Kirtley testified "No, sir." (Transcript at 55).  However, A&M did not ask Mr. Kirtley what happened to the equipment.

[43]*See* paragraph XXI on unnumbered page 11 of the Complaint.

[44]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 11, July 3, 2012.

to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). Therefore, in order to deny the debtor a discharge under § 727(a)(6)(A), the objecting party must show "by a preponderance of the evidence that: 1) the Court issued an order directed at the debtor; 2) the order was lawful; 3) the order was not one requiring a response to a material question or to testify; and 4) the debtor refused to obey the order." *Gillman v. Green (In re Green)*, 335 B.R. 181, 183 (Bankr. D. Utah 2005).

"The party objecting to discharge satisfies [its burden of showing non-compliance with an order] by demonstrating the debtor received the order in question and failed to comply with its terms." *Missouri ex rel. Nixon v. Foster (In re Foster)*, 335 B.R. 709, 716 (Bankr. W.D. Mo. 2006). Showing that a debtor merely failed to comply with the terms of an order is not enough; § 727(a)(6)(A) uses the word "refused"—accordingly, the debtor's lack of compliance with the order must be "willful and intentional." *Id.; Green*, 335 B.R. at 184; *see also Taunt v. Patrick (In re Patrick)*, 290 B.R. 306, 313 (Bankr. E.D. Mich. 2003); *but see Hunter v. Magack (In re Magack)*, 247 B.R. 406, 409–10 (Bankr. N.D. Ohio 1999) (stating that application of a civil contempt standard to action brought under § 727(a)(6)(A) is proper, rather than making finding of intent or wilfulness). Once the objector meets his burden, the debtor then has an obligation to explain his non-compliance with the court's order. *Foster*, 335 B.R. at 716. An objection to discharge under § 727(a)(6)(A) may be denied "'when the debtor's failure to comply with an order was due to inadvertence and mistake, as opposed to wilful, intentional disobedience or dereliction.'" *Solomon v. Barman (In re Barman)*, 237 B.R. 342, 349 (Bankr. E.D. Mich.1999) (quoting *United States v. Dowell (In re Dowell)*, 61 B.R. 75, 78 (Bankr. W.D. Mo.1986)); *Transamerica Commercial Acceptance Corp. v. Jarrell (In re Jarrell)*, 129 B.R. 29, 33 (Bankr. D. Del.1991) ("Bankruptcy law recognizes that mere failure does not equal refusal where the creditor does not show wilful or intentional disobedience, as opposed to inability, inadvertence or mistake."). The debtor cannot claim inadvertence or mistake, however, if the evidence presented establishes that the debtor was aware of the orders sent to him and simply disregarded them. *Barman*, 237 B.R. at 349.

*In re Wells*, 426 B.R. at 608-10. (footnotes omitted).

In *Wells*, like the case at bar, the creditors alleged that the debtor was ordered to produce

documents at a Federal Rule of Bankruptcy Procedure 2004[45] examination and that the debtor failed

to obey the Rule 2004 order and produce the documents.  Judge Houser found that the 2004 order

---

[45]Hereinafter, all rules refer to the Federal Rules of Bankruptcy Procedure unless specifically noted otherwise.

was a valid order of the court and that the debtor failed to comply with the order.  However, the court found that the creditor failed to prove that the debtor's failure to comply was either wilful or intentional.  The court declined to deny the debtor a discharge for failure to comply with the 2004 order because the denial of the debtor's discharge would be too harsh of an outcome. The court found that the creditors could have filed a motion to compel compliance with the 2004 order or filed a motion to hold the debtor in contempt, neither of which they did.

In the case at bar, the Court finds that the *Agreed Order Scheduling Examination Pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure*[46] (2004 Exam Order) was issued by this Court and is a lawful order.  However, A&M has failed to meet its burden to show that the Debtors *refused* to obey the order.  Other than stating numerous times that the Debtors "intentionally refused without justification or excuse"[47] to produce their jewelry and receipts for jewelry, A&M offered no evidence to show that the Debtors' failure to comply with the order was wilful and intentional.  The 2004 Exam Order specifically states that the Debtors were to produce the specified records and documents "that is *(sic)* in existence."[48]  Both Debtors testified that they had the diamond ring appraised post-petition.  (Transcript at 45 and at 68).  However, there was nothing introduced into evidence to prove that an actual written appraisal of the jewelry existed nor was there any proof that the Debtors wilfully and intentionally failed to obey the 2004 Exam Order by failing to bring the diamond ring and/or appraisal.

---

[46]*Agreed Order Scheduling Examination Pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure,* Case No. 1200624EE, Dkt. #33, April 3, 2012.

[47]*Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and Dischargeability Pursuant to 11 U.S.C. § 523,* Adv. Pro. No. 1200079EE, Adv. Dkt. #1, unnumbered page 11, July 3, 2012.

[48]*Agreed Order Scheduling Examination Pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure*, Case No. 1200624EE, Dkt. #33, p. 2, April 3, 2012.

A&M did not file a motion to compel the production of the jewelry, the receipts and/or any appraisals. Nor did A&M file a motion to hold the Debtors in contempt for failing to comply with the Rule 2004 Exam. Consequently, like the *Wells* court, the Court "declines to impose the death penalty in bankruptcy–*i.e.*, a denial of [the Debtors'] discharge under § 727(a)(6)(A)."[49]

## Conclusion

The Fifth Circuit has consistently held that a Chapter 7 debtor should be granted a discharge unless one of the grounds enumerated in § 727 for the denial of a discharge are proven by a preponderance of the evidence. *In re Beaubouef,* 966 F.2d at 178. "The exceptions are construed strictly against the creditor and liberally in favor of the debtor." *In re Duncan,* 562 F.3d at 695. (citation omitted).

A&M's Complaint and briefs contain many allegations of alleged wrong-doings by the Debtors and throws out four sections of § 727 it alleges are grounds for the denial of the Debtors' discharge. However, A&M failed to prove its allegations by a preponderance of the evidence. "Merely reiterating the language of the statute and setting forth the applicable legal standards falls far short of meeting plaintiff's burden to establish a prima facie case that specific assets belonging to the debtor prepetition were not included in his estate." *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 96 (Bankr. E.D. N.Y. 1997).

Consequently, the Court finds that the Complaint is not well taken and should be dismissed with prejudice.

A separate judgment consistent with this Opinion will be entered in accordance with Rules 7054, 9014, and 9021 of the Federal Rules of Bankruptcy Procedure.

### ##END OF OPINION##

---

[49]*In re Wells*, 426 B.R. at 611.